CONRAD SHIPYARD, L.L.C.                    CIVIL ACTION

VERSUS                                     No.: 19-10864

FRANCO MARINE 1 LLC, et al                 SECTION: "J" (1)


## ORDER & REASONS

Before the Court is a *Motion to Dismiss Third-Party Claim for Lack of Subject-Matter Jurisdiction, Personal Jurisdiction, or Forum Non Conveniens* **(Rec. Doc. 26)**, filed by Third-Party Defendant Harley Franco ("Franco"), an opposition thereto (Rec. Doc. 32) filed by Third-Party Plaintiff Harley Marine Services ("HMS"), and a reply (Rec. Doc. 43) filed by Franco. Additionally before the Court is a supplemental opposition (Rec. Doc. 45) furnished by HMS after a briefing order issued by the Court. Having considered the motion and legal memoranda, the record, and the applicable law, the Court finds the motion should be **DENIED**.

## FACTS AND PROCEDURAL BACKGROUND

HMS is a marine transportation company that provides clients with tug and barge services. Franco is the founder of HMS as well as, until March 2019, its Chairman, President, and CEO. Currently, HMS, via a derivative action brought by Macquarie Marine Services, LLC., is suing Franco in the Court of Chancery in Delaware for a wide swath of alleged activity including, amongst other things, misappropriation of assets, destruction of evidence, and coercing employees to engage

in wrongful conduct. (Rec. Doc. 32-3). HMS is also suing Franco in Washington state court for breach of contract and breach of fiduciary duty. (Rec. Doc. 26-1 at p. 67). Franco, in turn, is suing HMS in Washington state court for wrongful termination, breach of contract, and defamation. (Rec. Doc. 26-1 at p. 111-14).

The underlying cause of this action is the sale of two anchor-handling tugboats (the "Vessels") by Conrad Shipyard, L.L.C. ("Conrad") to Franco Marine 1, LLC ("FM1") and Franco Marine 2, LLC ("FM2", hereinafter referred to with FM1 as the "Franco LLCs").[1] The Franco LLCs are wholly owned by Franco and were formed by him for the sole purpose of being the contracting parties for the purchase of the Vessels.

Negotiations for purchase of the Vessels began when Franco reached out to Conrad to discuss HMS acquiring the vessels directly. Eventually, negotiations shifted to focus on Franco acquiring the Vessels himself, with the intention to then lease them to HMS for use. Franco formed the Franco LLCs to conduct this business. On September 12, 2017, while Franco was still in his position as head of HMS, the Franco LLCs and Conrad entered into Purchase Agreements for the sale of the Vessels.

According to Conrad's allegations, the Franco LLCs ceased making the monthly payments required by the Purchase Agreements after five months of construction. As recompense, Conrad sold two winches in its possession that it believed belonged to the Franco LLCs based on representations made by the Franco

---

[1] The following facts are taken from Conrad's initial complaint (Rec. Doc. 1-1) and HMS's third-party complaint (Rec. Doc. 9).

LLCs in the Purchase Agreements. HMS, however, claims the winches were in fact its property.

On June 3, 2019, Conrad commenced the present action by filing a complaint against the Franco LLCs for breach of contract arising out of the Purchase Agreements. Conrad also named HMS as a defendant in its breach of contract claim, despite HMS not being a party to the Purchase Agreements, under a "single business enterprise" theory. Furthermore, Conrad brought an additional claim for detrimental reliance claim against HMS alone, presumably in case its single business enterprise argument failed.

On July 17, 2019, HMS filed the third-party claim against Franco that is the subject of Franco's present motion to dismiss. HMS seeks indemnification from Franco in the event HMS is found liable for the Franco LLCs breach of contract. The basis for HMS's claims is that Franco's negotiations with Conrad and subsequent purchasing of the Vessels via the Franco LLCs exceeded his authority as CEO and breached his fiduciary duty to HMS by misrepresenting HMS's role in the transaction. Specifically, HMS alleges that Franco exceeded his authority by (1) directing HMS employees to negotiate with Conrad regarding the Vessels and (2) by negotiating and interacting with Conrad himself in a manner that, according to Conrad, led Conrad to believe HMS was the true party-in-interest to the Purchase Agreements, not the Franco LLCs. None of the prior litigation between HMS and Franco addresses this particular alleged breach of fiduciary duty, i.e. Franco

exceeding his authority during negotiations with Conrad and misrepresenting HMS's role in the Purchase Agreements.

On September 13, 2019, Franco filed his Motion to Dismiss for Lack of Personal Jurisdiction, or in the alternative Forum Non Conveniens. In his reply to HMS's opposition, Franco raised, for the first time, an argument that the Court should dismiss HMS's third-party claim for lack of subject-matter jurisdiction. In the interest of fairness, the Court allowed HMS the opportunity to file supplemental briefing in opposition to Franco's arguments relating to the Court's lack of subject-matter jurisdiction.

## LEGAL STANDARD

In deciding a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), "the district court is 'free to weigh the evidence and resolve factual disputes in order to satisfy itself that it has the power to hear the case.'" *Krim v. pcOrder.com*, Inc., 402 F.3d 489, 494 (5th Cir. 2005). The party asserting jurisdiction must carry the burden of proof for a Rule 12(b)(1) motion to dismiss. *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 762 (5th Cir.2011). The standard of review for a motion to dismiss under Rule 12(b)(1) is the same as that for a motion to dismiss pursuant to Rule 12(b)(6). *United States v. City of New Orleans*, No. 02–3618, 2003 WL 22208578, at *1 (E.D. La. Sept. 19, 2003). If a court lacks subject matter jurisdiction, it should dismiss without prejudice. *In re Great Lakes Dredge & Dock Co.*, 624 F.3d 201, 209 (5th Cir. 2010). When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should

consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits. *Hill v. City of Pasadena*, 561 F.2d 606, 608 (5th. Cir. 1977) (per curiam)).

Rule 12(b)(2) of the Federal Rules of Civil Procedure permits dismissal of a suit for lack of personal jurisdiction. "Where a defendant challenges personal jurisdiction, the party seeking to invoke the power of the court bears the burden of proving that jurisdiction exists." *Luv N'Care, Ltd. v. Insta-Mix, Inc.,* 438 F.3d 465, 469 (5th Cir. 2006). However, the plaintiff is not required to establish jurisdiction by a preponderance of the evidence; a prima facie showing is sufficient. *Id.* The court must accept the plaintiff's uncontroverted allegations and resolve all conflicts between the facts contained in the parties' affidavits and other documentation in favor of jurisdiction. *Id.*

A federal court sitting in diversity must satisfy two requirements to exercise personal jurisdiction over a nonresident defendant. *Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 220 (5th Cir. 2012). "First, the forum state's long-arm statute must confer personal jurisdiction. Second, the exercise of jurisdiction must not exceed the boundaries of the Due Process Clause of the Fourteenth Amendment." *Id.* The limits of the Louisiana long-arm statute are coextensive with constitutional due process limits. *Jackson v. Tanfoglio Giuseppe, SRL*, 615 F.3d 579, 584 (5th Cir. 2010). Accordingly, the inquiry here is whether jurisdiction comports with federal constitutional guarantees. *See id.*

The Due Process Clause of the Fourteenth Amendment guarantees that no federal court may assume personal jurisdiction of a non-resident defendant unless

the defendant has certain "minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citation omitted). The Supreme Court has recognized two types of personal jurisdiction: specific and general. *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1779-80 (2017).[2]

Specific jurisdiction is limited to "adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (internal quotation marks and citation omitted). To establish specific jurisdiction, a plaintiff must show that "(1) there are sufficient (i.e., not random fortuitous or attenuated) pre-litigation connections between the non-resident defendant and the forum; (2) the connection has been purposefully established by the defendant; and (3) the plaintiff's cause of action arises out of or is related to the defendant's forum contacts." *Pervasive Software*, 688 F.3d at 221 (internal quotation marks and citation omitted). The defendant can then defeat the exercise of specific jurisdiction by showing that it would be unreasonable. *Id.* at 221-22.

## DISCUSSION

## I. WHETHER THE COURT HAS SUBJECT-MATTER JURISDICTION OVER HMS'S THIRD-PARTY CLAIM

---

[2] HMS does not attempt to argue that the Court possesses personal jurisdiction over Franco based on general jurisdiction. Indeed, the theory of general personal jurisdiction is so clearly inapplicable here that it warrants no further discussion.

Franco argues that HMS's third-party claim for indemnification is not yet ripe and therefore the Court must dismiss it for lack of subject-matter jurisdiction. The crux of Franco's lack of ripeness argument is that "the harm [can] not even occur until or unless an adverse judgment against HMS is entered." (Rec. Doc. 43 at 3). HMS counters by arguing that despite the technical posture of its claim in indemnity, the true nature of its claim is tortious in nature, thereby differentiating it from the majority of "true" indemnity claims that are contractual or statutory in nature. Moreover, HMS argues that there is no support under either Washington or Louisiana law for the argument that an indemnity claim cannot be brought until after adjudication of the underlying suit.

In general, a claim is "ripe if any remaining questions are purely legal ones; conversely, a case is not ripe if further factual development is required." *Chevron U.S.A. Inc., v. Traillour Oil Co.*, 987 F.2d 1138, 1153 (5th. Cir. 1993). To demonstrate that a claim is ripe, a litigant must show "the fitness of the issues for judicial decision, and (2) the hardship to the parties caused by withholding court consideration." *Window Specialists, Inc. v. Forney Enters*, 26 F. Supp. 3d 52 (D.D.C. 2014).

Here, the true facts at issue are ready for judicial decision. Franco has already committed the acts that allegedly constitute a breach of his fiduciary duty. Conrad has already instituted suit against HMS based on those acts, undoubtedly causing HMS to incur legal fees and expenses. The fact that a determination of HMS's liability to Conrad has not yet occurred does not affect the Court's ability to find whether Franco breached his fiduciary duty to HMS.

Furthermore, adjudicating this case without Franco here is akin to a missing seat at the table. A significant portion of this case will be dedicated to determining Franco's actions and deciding what legal significance to impart to them. Obtaining and interpreting crucial operative facts without Franco will increase the difficulty of properly assessing Conrad's claims and HMS's defenses, thereby causing the parties hardship. Franco's absence will cause further hardship as HMS will likely be forced to relitigate this case to some extent, expending even more in legal fees and costs.

When it comes to indemnity claims specifically, courts use state law to determine whether an indemnity claim is ripe. *Northfield Ins. Co. v. Loving Home Care, Inc.*, 363 F. 3d 523, 536-37 (5th. Cir. 2004).

Franco argues that the Court should use Washington law to analyze the ripeness of an indemnity claim in this case. Despite not stating so explicitly, Franco likely premises this argument on the fact that HMS's breach of fiduciary claim will be analyzed under Washington law. However, "the body of law that governs a claim for indemnity or contribution usually is the same body of law that establishes the indemnitee's primary liability to the plaintiff." *Hardy v. Gulf Oil Corp.*, 949 F. 2d 826, 830 n.7 (5th. Cir. 1992) (citing *Marathon Pipe Line Co. v. Drilling Rig Rowan/Odessa,* 761 F.2d 229, 235 (5th Cir.1985)). Here, Conrad's claims against HMS, the claims that would establish HMS's liability, are governed by Louisiana law. (Rec. Doc. 26-1 at p. 38). Regardless, under either Washington or Louisiana law, HMS's third-party indemnity claim is ripe.

### A. Louisiana Law

In *Suire v. Lafayette City–Parish Consolidated Government,* 04–1459, 04–1460, 04–1466 (La.4/12/05), 907 So.2d 37, 51, the Louisiana Supreme Court held that "an indemnitor is not liable under an indemnity agreement until the indemnitee actually makes a payment or sustains losses." *Id.* Crucially, the *Suire* court's holding focused on when an indemnitor became liable, not when the indemnitee's claim became ripe. Subsequent Louisiana jurisprudence clarifies that "there is a distinction between the right to 'claim' indemnity and the right to 'collect' indemnity." *Reggio v. E.T.I.,* 07–1433, p. 11 (La.12/12/08), 15 So.3d 951, 960 (Weimer, J., concurring); *see Pizani v. St. Bernard Parish*, 2012-1084 (La. App. 4 Cir. 9/26/13), 125 So.3d 546, 553; *Dean v. Entergy La., L.L.C.*, 10-887 (La. App. 5 Cir. 10/19/2010), 2010 WL 9447498 at *4 (unpublished).

Although the right to collect indemnity does not accrue until the underlying dispute is settled, the right to claim indemnity via impleader before adjudication of the underlying dispute is "consistent with the legislative history and purpose of La. C.C.P. art 1111." *Pizani*, 2012-1084 at p. 10, 125 So. 2d at 553 (citing *Moreno v. Entergy Corp.,* 10–2268, p. 5 (La.2/18/11), 64 So.3d 761, 765–66) (Victory, J., concurring).[3] This is consistent with the purpose of the impleader procedure, which is to "avoid multiple lawsuits; to facilitate and expedite the trial of litigation; and, wherever possible, consistent with the orderly procedure and due regard for the rights

---

[3] La. C.C.P. art. 11 states "[t]he defendant in a principal action by petition may bring in any person, including a codefendant, who is his warrantor, or who is or may be liable to him for all or part of the principal demand." Notably, the language of La. C.C.P. art 11 tracks FRCP(14) in its entirety. In fact, Louisiana courts have relied on federal courts interpretation of FRCP(14) when holding that third-party indemnity impleader claims are allowed before settlement of the underlying suit. *See Pizani,* 2012-1084 at p. 12-13, 125 So. 2d at 554-55.

of all litigants, to dispose of all three phases of an action in a single proceeding." *Breaux v. Texas & P. Ry. Co.,* 147 So.2d 693 (La. App. 1 Cir. 1962).

The present case is an excellent example of the rationale behind impleader. HMS's defenses against Conrad and claims against Franco present the same legal issues and arise out of identical facts. Allowing HMS to implead Franco reduces litigation costs and the possibility of inconsistent rulings. All questions of liability and fault surrounding the Vessels will be adjudicated and handled in one proceeding.

*Moser v. Navistar International Corp.*, No. 17-598, 2019 WL 763480 *4 (E.D. Tex. Feb. 2019) addressed the precise issue before the Court, namely whether a claim for indemnity brought under Louisiana law before the indemnitee "actually makes payment or sustains loss" is constitutionally ripe. *Id.* After a thorough review of Louisiana jurisprudence, the *Moser* court held that the indemnitee "may plausibly assert its third-party claims under Louisiana case law. Therefore, dismissal is improper at this time." *Id.* This further persuades the Court that its interpretation of the interplay between Louisiana indemnity law and ripeness is correct, and Franco's motion for dismissal of HMS's third-party claim for lack of subject matter jurisdiction must fail if analyzed under Louisiana law.

### B. Washington Law

Franco has not cited, nor has the Court's independent research revealed, any Washington state court decisions addressing the ripeness of an indemnity claim. Rather Franco's proffered legal support, *Sabey v. Howard Johnson & Co.*, 101 Wash. App. 575, 593, 5 P. 3d 730, 739 (2000), is inapposite.

*Sabey* does not discuss the ripeness of indemnity claims at all. Instead, *Sabey* stands for the proposition that under Washington law an indemnity claim *accrues* for statute of limitation purposes "when the party seeking indemnity pays or is legally adjudged obligated to pay damages to a third party." *Id.* Franco's argument assumes that accrual and ripeness are synonymous. On the contrary, "once a claim has accrued it is necessarily ripe; but the converse, that once a claim is ripe it has necessarily accrued for statute-of-limitations purposes, need not follow." *Jones v. Allen*, 483 F. Supp. 2d 1142, 1149 (M.D. Ala. Apr. 2007). Thus, it is entirely possible for a claim to be ripe for standing purposes but to have not yet accrued for statute of limitations purposes. *See* 6 Wright & Miller, FED. PRAC. & PROC. CIV. § 1451 (3d ed.) ("Rule 14 allows defendant to implead one 'who ... may be liable' to the third-party plaintiff for all or part of the plaintiff's claim against it. The words 'may be liable' mean that defendant is permitted to join *someone against whom a cause of action has not yet accrued*, provided that the claim is contingent upon the success of plaintiff's action and will accrue when defendant's liability is determined in the main action or plaintiff's claim is satisfied.") (emphasis added).

In further support of the conclusion that Washington's indemnity accrual jurisprudence has no bearing on indemnity ripeness, Washington federal district courts routinely find that indemnity claims seeking declarations as to the duty to indemnify are ripe before liability is found as to the underlying claim. *See Allstte Indem. Co. v. Pacheco*, 14-5366, 2014 WL 5421187 at *4 (W.D. Wash. Oct. 2014);

*Canal Indem. Co. v. Adair Homes, Inc.*, No. 09-5561BHS, 2010 WL 3021874 at *2; *Lamar Co., LLC. v. Continental Cas. Co.*, No. 05-320, 2006 WL 1210228 at *5.

Washington seems to have reached a similar balance as Louisiana. While the collection of indemnity or the accrual of an indemnity claim does not begin until some imposition of damages or liability on the indemnitee, that does not prohibit the impleading of or bringing suit against the potential indemnitor before full resolution of the underlying liability.

Accordingly, regardless of whether Louisiana or Washington law governs the ripeness of the indemnity claim, the Court finds that HMS's third-party claim is ripe and therefore the Court possesses subject-matter jurisdiction.

## II.    WHETHER THE COURT HAS PERSONAL JURISDICTION OVER FRANCO

In order to assert personal jurisdiction over Franco, the Court must establish two things. First, that Franco's contacts with Louisiana were truly outside the scope of his authority as CEO of HMS, thereby making the contact attributable to him personally. *See Stuart v. Spademan*, 772 F. 2d 1185, 1197 (5th.Cir. 1985) ("[A]n individual's transaction of business within the state solely as a corporate officer does not create personal jurisdiction over that individual though the state has in personam jurisdiction over the corporation."). Secondly, even if the contacts are attributable to Franco personally, it must be established that said contacts are sufficient to establish personal jurisdiction.

## A. Whether Franco Exceeded His Corporate Authority in His Negotiations Regarding the Vessels

Resolving all facts in favor of jurisdiction, the Court has little difficulty in finding that Franco's activities directed towards Louisiana exceeded the scope of his authority as CEO of HMS, thereby making his activities attributable to him personally. *Luv N'Care, Ltd.*, 438 F.3d at 469. The declaration of Matthew Gooden, current CEO/President of HMS and former COO of HMS under Franco, unequivocally asserts that all activity directed towards Conrad was initiated and orchestrated by Franco personally, not Franco in his capacity as head of HMS. (Rec. Doc. 32-1).

The key facts stated in Mr. Gooden's declaration are as follows: (1) Franco contacted Conrad in 2017 to begin negotiations regarding the purchase of the Vessels; (2) Franco had no authorization or approval from the HMS board to direct HMS employees to negotiate and communicate with Conrad regarding the Vessels; (3) absent such authorization or approval, Franco had no authority to direct HMS employees interact with Conrad on his personal behalf; and (4) all negotiation and interaction between HMS employees and Conrad was actually undertaken at the behest of Franco. *Id.* Thus, HMS has properly alleged that that Franco engaged in tortious activity outside of his role as a corporate representative, thereby potentially subjecting himself to personal jurisdiction. *See Dykes v. Maverick Motion Picture Group, LLC*, No. 08-536, 2011 WL 900276 at *5 (M.D. La. Mar. 2011).[4]

### B. Whether Franco's Activities Constitute Minimum Contacts

---

[4] Although not relevant to the ultimate success of HMS's breach of fiduciary duty claim in the present case before this Court, the detailed allegations of corporate impropriety levied against Franco in Washington state court (Rec. Doc. 32-5), support HMS's overall narrative that Franco was acting in breach of his fiduciary duty.

HMS's assertion that all negotiations, activities, contacts, etc. undertaken by HMS employees in connection with the Vessels were undertaken for Franco personally and not HMS is particularly important when analyzing whether the Court has personal jurisdiction over Franco. Taken as true, HMS's allegations mean all the activities and contacts Conrad attributes to HMS in its complaint are more properly attributed to Franco. This includes (1) contacting Conrad in 2017 for the price of acquiring the Vessels, (2) conducting several months of negotiations related to pricing, financing, payment terms and other contractual issues, (3) convincing Conrad to proceed with construction of the Vessels by representing that HMS was in the process of finalizing financing arrangements with CAT Financing, (4) directing employees of HMS, including employees in key officer positions, to be copied on correspondence between himself and Conrad, (5) arranging for the two Winches owned by HMS to be sent to Conrad for eventual placement on the Vessels,[5] (6) directing HMS representatives to engage in post-contract discussions with Conrad regarding payment of invoices, and (7) directing HMS employees to attend the project kick-off meeting, attend project status meetings, and handle all change orders and questions of design. (Rec. Doc. 1 at para. 12-27).

The Court finds the Fifth Circuit's opinion in *Panda Brandywine Corp. v. Potomac Elec. Power. Co.*, 253 F.3d 865 (5th.Cir.2001) to be instructive when answering the question of its jurisdiction over Franco. In *Brandywine*, the plaintiff

---

[5] The Court is only noting the shipment of the Winches to Conrad as part of Franco's alleged unauthorized conduct that led to Conrad believing HMS was the true party-in-interest to the contract. (Rec. Doc. 1 at Para. 24). The Court is explicitly not finding that HMS has properly plead a claim against Franco for the value of the Winches.

was suing the defendant for tortious interference with plaintiff's financing agreements. *Id.* at 867. Plaintiff was a Delaware corporation with its principal place of business in Texas, and the defendant was a Virginia corporation with its principal place of business in Washington D.C. *Id.* The alleged tortious interference was defendant's divestiture of certain electricity-generating assets and power-purchasing contracts, which allegedly caused plaintiff harm in Texas. Plaintiff then brought suit in Texas. *Id.* In determining whether Texas possessed jurisdiction over the defendant, the court looked to whether defendant had "invoked the benefits and protections of Texas's laws when it acted to divest its interests" in the financing agreements *Id.* at 869. Ultimately, the court found Texas did not possess jurisdiction over defendant because "the financing agreements [were] not governed by Texas law, [were] not to be performed in Texas, and have no relation other than the fortuity that [plaintiff] resides there. *Id.* at 870.

Subsequent Fifth Circuit decisions expanded on the jurisdictional principles discussed in *Brandywine.* "A non-resident can establish contact with the forum [state] by taking purposeful and affirmative action, the effect of which is to cause business activity (foreseeable by the defendant) in the forum state." *Central Freight Lines, Inc. v. APA Transp. Corp.,* 322 F.3d 376, 382 (5th Cir. 2003). The business activity is "foreseeable by the defendant" if the forum state is "clearly the hub of the parties' activities." *Moncrief Oil. Intern. Inc. v. OAO Gazprom*, 481 F.3d 309, 313 (5th. Cir. 2007). The most important consideration in determining the "hub of the parties' activities" is where the work contemplated by the contract is to be done. *Id.* In *Central*

*Freight Lines*, the court placed heavy emphasis on the lack of a forum selection or choice-of-law clause of another state when upholding jurisdiction over the defendant in Texas. 322 F.3d 383. The lack of such a clause made it much more likely the defendant was aware of the possibility of being haled into court in Texas. *Id.* Conversely, in *OAO Gazprom*, the court found the existence of a foreign arbitration and choice-of-law clause militated strongly against a finding of personal jurisdiction in the forum state. 481 F.3d at 313.

Here, Franco took purposeful and affirmative action by initiating and conducting negotiations with Conrad that he intended to result in the building of the Vessels in Louisiana. All significant activity contemplated by the contract was to take place in Louisiana. Not only does the Purchase Agreement lack a choice-of-law or forum selection clause for a non-Louisiana state, but it in fact contains an extremely strong choice-of-law and venue provision in favor of Louisiana and Louisiana law. (Rec. Doc. 26-1 at p. 38); *Cf. Jones v. Petty–Ray Geophysical, Geosource, Inc.*, 954 F.2d 1061, 1069 (5th Cir.1992) (stating that forum-selection and choice-of-law clauses "indicate rather forcefully" that defendant "did not purposefully direct its activities towards Texas."). Thus, a fortiori, Franco was even more acutely aware of the possibility of being haled into court in Louisiana than if the Purchase Agreement had merely been silent regarding forum selection and choice-of-law.

Moreover, unlike the defendant in *Brandywine* whose tortious conduct was not directed towards Texas in any way, Franco repeatedly sent communications to Louisiana that were an alleged breach of his fiduciary duty. "When the actual content

of communications with a forum gives rise to intentional tort causes of action, this alone constitutes purposeful availment." *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 213 (5th. Cir. 1999). In *Brandt*, the court found the existence of personal jurisdiction when the claim "arises from a breach of fiduciary duty based on a failure to disclose material information…[and] the [defendant] continually communicated with the forum while steadfastly failing to disclose material information." *Id.* Here, HMS's claim for breach of fiduciary duty is based on Franco's continued misrepresentations to Conrad as to his authority as CEO to engage in the Vessels transaction on HMS's behalf. *See Central Freight Lines*, 322 F.3d at 383 ("[I]t is clear that specific personal jurisdiction may be based on intentionally tortious conduct that is purposefully directed toward the forum state.").

Furthermore, the *Brandt* court noted the immateriality of the number of defendant's physical visits to the forum state in cases where the claim arises from the content, or lack thereof, of defendant's communications. *Id.* ("[I]t is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a state in which business is conducted.") (citations omitted). Accordingly, the Court finds that Franco's repeated negotiations, both personally and via HMS employees, with Conrad to build and eventually purchase Vessels in Louisiana constitute sufficient contacts that Franco could reasonably anticipate being haled into Court in Louisiana. *See id.*

## C. Whether HMS's Claim Arises Out of or Relates to Franco's Activities

The Court further finds that HMS's cause of action arises out of Franco's contacts with Louisiana. *See Pervasive Software*, 668 F.3d at 221. Franco's conduct and communications with Conrad giving rise to HMS's third-party complaint are the same conduct and communications subjecting Franco to jurisdiction in Louisiana. *See Central Freight*, 322 F.3d at 383*; see also Brandt*, 195 F. 3d at 213. It is, in fact, the exact same contacts and conduct upon which Conrad based its initial complaint against HMS. The primary disputed issue between HMS and Franco is which party was truly responsible for those contacts, Franco in his personal capacity or Franco as a representative of HMS.

Franco attempts to argue that because "HMS's third-party complaint arises out of Mr. Franco's relationship with HMS—a relationship having its hub in Washington," the claim does not arise of Franco's contacts with Louisiana. (Rec. Doc. 26-1 at p. 81). The Court is not persuaded. Franco offers no legal support for this metaphysical take on specific jurisdiction analysis. The crux of a specific jurisdiction analysis is the defendant's actual conduct, not legal technicalities such as HMS and Franco's relationship being governed by Washington fiduciary law. *See Luv N' Care, Ltd.*, 438 F.3d at 471 (declining to consider "technicalities"). "A minimum contacts analysis is more realistic than mechanical, turning on matters of substance rather than form." *In re DePuy Orthopaedics, Incorporated, Pinnacle Implant Hip Product Liability Litigation*, 888 F. 3d 753, 779 (5th. Cir. 2018) (citing *Bd. Of Cty. Comm'rs v.*

*Umbehr*, 518 U.S. 668, 680 (1996)) ("In determining what is due process of law regard must be had to substance, not to form.")

Here, the actual conduct or communication giving rise to HMS's indemnity claim was directed at Louisiana. Franco has offered no legal support for his argument that because his contacts with Louisiana constituted a breach of Washington fiduciary law, the Court should treat HMS's suit as arising out of Franco's contacts with Washington, not Louisiana. Doing so would be precisely the sort of formulaic analysis that is inappropriate when analyzing personal jurisdiction. *See id.* Instead, the Court finds that the substance of HMS's third-party indemnity claim clearly arises out Franco's allegedly unauthorized communications and negotiations directed towards an entity in Louisiana, thereby satisfying the requirement that HMS's action arises out of or is related to Franco's contacts with Louisiana. *Pervasive Software*, 688 F.3d at 221.

### D. Whether Exercise of Jurisdiction over Franco is Fair or Reasonable

Because HMS has established a prima facie case that Franco has minimum contacts with Louisiana, the burden now shifts to Franco to show that the exercise of jurisdiction would be unreasonable. *Luv N' Care*, 438 F.3d at 473. The Court considers five factors when determining if exercising jurisdiction over Franco would be reasonable. "(1) [T]he burden on the nonresident defendant, (2) the forum state's interests, (3) the plaintiff's interest in securing relief, (4) the interest of the interstate judicial system in the efficient administration of justice, and (5) the shared interest of the several states in further fundamental societal policies." *Id.*

First, Franco has failed to identify any burdens outside of the basic inconveniences imposed on any party to litigation, such as "having to travel to Louisiana for depositions, hearings, and trial and retain local counsel." (Rec. Doc. 26-1 at p. 2). Not only are such inconveniences present in every litigation but considering both Franco's position as sole owner of the Franco LLCs and that Franco's behavior is a substantial component of HMS's defense, Franco will be subject to the inconveniences of this case to some degree regardless of whether he is personally a party.

Second, Louisiana has an interest in fully adjudicating a contract dispute regarding Vessels constructed in Louisiana and governed by Louisiana law. Franco's reliance on *Asahi Metal Industry Co. Ltd. v. Superior Court of California, Solano County*, 480 U.S. 102, (1987), is misplaced. Franco relies on *Asahi* for the proposition that the forum state has a lessened interest when the claim is for indemnification and the indemnitee is not from the forum state. As part of its analysis in determining California lacked interest in a Japanese company's claim for indemnification over a Taiwanese company, the *Asahi* court noted that "[a]ll that remains is a claim for indemnification" and "the transaction on which the indemnification claim is based took place in Taiwan." *Id.* at 115.[6] Here, there is more than just HMS's claim for indemnification against Franco. Conrad's claim, which HMS's claim is essentially derivative of, is still pending before the Court. Moreover, HMS's indemnification

___
[6] To the extent Louisiana does have a lessened interest, it is worth nothing the *Asahi* Court based its ultimate finding of unreasonableness on a combination of "the international context, the heavy burden on the alien defendant, and the slight interests of the plaintiff and the forum state." *Asahi*, 480 U.S. at 116. There is no international context or heavy burden on an alien defendant in the present case.

claim is based on Franco's allegedly unauthorized conduct concerning a transaction entered into in Louisiana. Thus, the Court finds Louisiana has an interest in adjudicating this dispute.

Third, HMS has an interest in litigating this issue in Louisiana to avoid duplicity of litigation. HMS's defense to Conrad's claims present precisely the same legal and factual issues that give rise to its cause of action against Franco. Forcing HMS to litigate essentially the same case in two different courts not only risks inconsistent results, but also subjects HMS to additional expenses and burdens.

Fourth and fifth, the efficient administration and the shared interest of the several states in furthering fundamental societal policies counsel the Court that exercising jurisdiction over Franco is not unreasonable. Exercising jurisdiction over Franco allows arguments and claims related to the Vessels to be litigated in one case, thereby furthering the efficient administration of justice and expediting an end to this particular dispute. For the foregoing reasons, the Court finds Franco has failed to meet his burden evincing that the establishment of personal jurisdiction is unreasonable. *See Pervasive Software*, 688 F.3d at 221-22.

### III.  WHETHER THE COURT SHOULD DISMISS HMS'S CLAIM UNDER THE DOCTRINE OF FORUM NON CONVENIENS

The doctrine of forum non conveniens allows a court to "decline jurisdiction and [to] actually dismiss a case, even when the case is properly before the court, if the case could more conveniently be tried in another forum." *In re Volkswagen of Am. Inc.*, 545 F.3d 304, 313 (5th. Cir. 2008). In determining whether to utilize forum non

conveniens, a court must first decide whether there exists an adequate and available alternative forum. *Gonzalez v. Chrysler Corp.*, 301 F.3d 377, 379-80 (5th. Cir. 2002). An alternative forum is available if the parties will be subject to the new forum's jurisdiction, and it is adequate "if the parties will not be deprived of all remedies or treated unfairly. *Id.* Here, it is undisputed that the state of Washington is a viable alternative forum.[7]

Nevertheless, the doctrine of forum non conveniens has been severely restricted in recent years. In 2007, the Supreme Court, in *Sinochem International Company, Ltd. v. Malaysia International Shipping Corp.*, stated that "[t]he common-law doctrine of forum non conveniens has continuing application in federal courts only in cases where the alternative forum is abroad, and perhaps in the rare instances where a state or territorial court serves litigational convenience best." 549 U.S. 422, 430 (2007). The *Sinochem* court does not elaborate on what facts may give rise to the "rare instances" that warrant forum non conveniens dismissal in favor of a state court, nor has the Court's independent research revealed a case that defines the "rare circumstances" exception. *See Waste Management of Louisiana, L.L.C. v. Jefferson Parish*, 48 F. Supp. 3d 894, 906 n. 110 (E.D. La. Sept. 2014). Regardless, the Court finds that whatever "rare circumstances" is intended to encompass, this case does not fit the definition.

---

[7] Both Franco and HMS are citizens of Washington.

Litigational convenience in the forum non conveniens context is determined after consideration of both the public and private factors elucidated by the Supreme Court in *Gulf Oil v. Gilbert*, 330 U.S. 501 (1947). The factors include:

Private Factors

(1) the relative ease of access to sources of proof;

(2) the availability of compulsory process to secure the attendance of witnesses;

(3) the cost of attendance for willing witnesses;

(4) whether the plaintiff has sought to vex, harass, or oppress the defendant; and

(5) all other practical problems that make trial of a case easy, expeditious and inexpensive.

Public Factors

(1) the administrative difficulties flowing from court congestion;

(2) the local interest in having localized controversies decided at home;

(3) the familiarity of the forum with the law that will govern the case;

(4) the avoidance of unnecessary problems of conflict of laws and the application of foreign law and

(5) the unfairness of burdening citizens in an unrelated forum with jury duty.

*DTEX, LLC v. BBVA Bancomer, S.A.* 508 F. 3d 785, 794 (5th. Cir. 2007). A weighing of the public and private factors in this case does not favor Franco enough to qualify as a "rare circumstance" and thereby invoke forum not conveniens.

The private factors militate against dismissal. It is true that many important witnesses in this matter are located in Washington. (Rec. Doc. 26-1). Conversely, it is also true that Louisiana is home to many crucial witnesses. (Rec. Doc. 32-6). Franco identifies key witnesses from Washington who are no longer HMS employees, and thus will not be subject to compulsory process in this Court. However, HMS identifies even more key witnesses from Louisiana, primarily Conrad employees, who would not be subject to compulsory service in Washington. Furthermore, HMS is not seeking to "vex" or "harass" or Franco by bringing him into a suit in Louisiana. *See DTEX*, 508 F.3d at 794. HMS is bringing its claims against Franco in Louisiana for the simple reason that Conrad is a Louisiana entity who brought suit against HMS in Louisiana, and HMS's primary defense is Franco's alleged misconduct.

Ultimately, forcing HMS to bring its indemnification claim in Washington would "result in increased costs for the parties, as they will be forced to litigate in both fora, in addition to the possibility of inconsistent rulings that may result from conducting trials in two jurisdictions." *Brice v. C.R. England, Inc.*, 278 F. Supp 2d 487, 490 (E.D. Pa. Aug. 2003).[8] The benefits of adjudicating all disputes over the Vessels in one action means the private factors weigh in favor of retaining HMS's third-party claim over Franco.

---

[8] In *Brice*, the court dismissed because a case on very similar grounds was already pending in Ohio state court. 278 F. Supp. at 490. Here, the present action is the first case attempting to adjudicate the Vessels dispute.

Franco argues that the public factors are heavily in his favor because "the dispute between Mr. Franco and HMS is a controversy that is local to Washington, and Washington courts have an interest in resolving this dispute, which will be governed by Washington law." (Rec. Doc. 26-1 at p. 12). Franco's arguments consistently misconstrue HMS's complaint as an independent claim arbitrarily brought against Franco in Louisiana. The fact remains that Conrad, a Louisiana entity, initiated this lawsuit. The ultimate question to be answered by the various claims in this suit is who is responsible for the roughly $18 million owed to Conrad under the Purchase Agreements—HMS, the Franco LLC's, or Franco himself. Unlike a minimum contacts analysis, which requires the Court to analyze HMS's third-party claim independently from Conrad's suit against HMS, there is no requirement that the Court ignore practical consequences of Conrad's initial suit when conducting a forum non conveniens analysis. [9]

The ongoing litigation between HMS and Franco in Washington state court has very little to do with the facts of this case. (Rec. Doc. 26-1). Whether either party wronged the other over the course of Franco's time as head of HMS is of little consequence to the specific dispute at issue here; namely, whether Franco exceeded his authority during negotiations with Conrad such that he is liable to HMS for any misrepresentation he made on HMS's behalf during negotiations.

---

[9] *Seiferth v. Helicopteros Atunderos, Inc.*, 472 F. 3d 266, 275 n. 6 (5th. Cir. 2006) ("There is no such thing as supplemental specific personal jurisdiction; if separate claims are pled, specific personal jurisdiction must independently exist for each claim.") (quoting 5B Charles Alan Wright & Arthur Miller, Fed. Prac. & Proc: Civil 3d § 135, at 299 n. 30 (2004)).

Franco further posits that the public interest factors weigh in his favor because Washington fiduciary law will govern HMS's claim. Assuming arguendo that Franco is correct about the application of Washington law to HMS's claim, the application of said Washington law to HMS's claim may weigh in favor of dismissal. *See Dart-Barnett Operating Co., LLC v. Esperada Texas, LP*, No. 07-1099, 2008 WL 4056783 (W.D. Mich. Aug. 2008). Moreover, while Washington does recognize indemnity based on breach of duty, the Washington Supreme Court has never explicitly held a defendant in Franco's position to be liable for indemnity. *See Fortune View Condominium Ass'n v. Fortune Star Dev. Co.*, 90 P.3d 10, 62, 1067 (Wash. 2004). Thus, the Court will be required to undergo an *Erie* analysis and attempt to prognosticate as to whether the Washington Supreme Court would hold Franco liable for such a breach of duty. *See Ladue v. Chevron, USA., Inc.*, 920 F. 2d 272, 274 (5th. Cir. 1991).

Nevertheless, it can hardly be said that it is a "rare circumstance" for a federal court in one state to decide an issue using the law, even unsettled law, of another state. *See Moser*, 2019 WL 763480 *4 (where a federal district court in Texas interpreted an unclear question of Louisiana law). Furthermore, Franco's case cited in support, *Dart-Barnett Operating*, only found use of foreign law as grounds for dismissal after determining the private interest factors favored neither party. 2008 WL 4056783 at *4. Here, the Court has determined the private factors weigh in favor of retaining jurisdiction over HMS's claim in Louisiana.

Thus, for the foregoing reasons, the Court declines to dismiss HMS's third-party claim against Franco under the doctrine of forum non conveniens.

## CONCLUSION

Accordingly,

**IT IS ORDERED** that Third-Party Defendant Harley Franco's *Motion to Dismiss Third-Party Claim for Lack of Subject-Matter Jurisdiction, Personal Jurisdiction, or Forum Non Conveniens* **(Rec. Doc. 26)** is hereby **DENIED**.

New Orleans, Louisiana, this 3rd day of January, 2020.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE