UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

CONRAD SHIPYARD, L.L.C.                    CIVIL ACTION

VERSUS                                     No.: 19-10864

FRANCO MARINE 1 LLC, et al                 SECTION: "J" (1)

## ORDER & REASONS

Before the Court is a *Motion for Partial Summary Judgment* **(Rec. Doc. 81)**, filed by Defendants FRANCO MARINE 1, LLC ("FM1"), FRANCO MARINE 2, LLC ("FM2"), and Third-Party Defendant Harley Franco ("Franco"), seeking dismissal of Harley Marine Services, Inc.'s indemnification claims against them. Defendant Harley Marine Services, Inc ("HMS") filed an opposition thereto (Rec. Doc. 84), and FM1, FM2, and Franco filed a reply (Rec. Doc. 87). Having considered the motion and legal memoranda, the record, and the applicable law, the Court finds the motion should be **DENIED**.

## FACTS AND PROCEDURAL BACKGROUND

HMS is a marine transportation company that provides clients with tug and barge services. Franco is the founder of HMS as well as, until March 2019, its Chairman, President, and CEO. HMS terminated Franco's employment in March 2019 after alleged activity including, amongst other things, misappropriation of company funds and assets and breach of fiduciary duty, which led to multiple lawsuits in Delaware and Washington state courts. (Rec. Doc. 26-1 at 67-114).

The underlying cause of this action is the sale of two anchor-handling tugboats (the "Vessels") by Conrad Shipyard, L.L.C. ("Conrad") to Franco Marine 1, LLC ("FM1") and Franco Marine 2, LLC ("FM2," hereinafter referred to with FM1 as the "Franco LLCs").[1] Negotiations for purchase of the Vessels began when Franco reached out to Conrad to discuss HMS acquiring the vessels directly. Eventually, negotiations shifted to focus on Franco acquiring the Vessels himself, with the intention to then lease them to HMS for use. Franco then formed the Franco LLCs on July 24, 2017 for the sole purpose of being the contracting parties for the purchase of the Vessels. Conrad and Harley Franco, on behalf of FM1, FM2, and HMS, executed the Vessel Construction Contracts (the "Contracts") for the two tugboats on September 12, 2017, for a total amount of $19,652,000.00.

According to Conrad's allegations, the Franco LLCs ceased making the monthly payments required by the Contracts five months after construction commenced. As recompense, Conrad sold two winches in its possession that it believed belonged to the Franco LLCs based on representations made by the Franco LLCs in the Purchase Agreements. HMS, however, claims the winches were in fact its property.

On June 3, 2019, Conrad commenced the present action by filing a complaint against the Franco LLCs for breach of contract. Conrad also named HMS as a defendant in its breach of contract claim, despite HMS not being a party to the

---

[1] The following facts are taken from Conrad's initial complaint (Rec. Doc. 1-1) and HMS's third-party complaint (Rec. Doc. 9).

Contracts, under a "single business enterprise" theory. Conrad also brought an additional claim for detrimental reliance claim HMS alone.

HMS counterclaimed for conversion against Conrad, brought a cross-claim for indemnity against FM1 and FM2, and brought a third-party indemnity claim against Franco. The basis for HMS's cross-claims is that Franco's negotiations with Conrad and subsequent purchasing of the Vessels via the Franco LLCs exceeded his authority as CEO and breached his fiduciary duty to HMS by misrepresenting HMS's role in the transaction. Specifically, HMS alleges that Franco exceeded his authority by (1) directing HMS employees to negotiate with Conrad regarding the Vessels and (2) by negotiating and interacting with Conrad himself in a manner that, according to Conrad, led Conrad to believe HMS was the true party-in-interest to the Contracts, not the Franco LLCs.

FM1 and FM2 filed cross-claims against HMS seeking reimbursement of the $2 million that FM1 paid to Conrad for the Vessels. (Rec. Doc. 25). Franco filed a counterclaim against HMS seeking indemnification and advancement of expenses. (Rec. Doc. 48). Franco, FM1, and FM2 filed the present motion on October 18, 2022, requesting summary judgment in their favor on HMS's indemnity claims. (Rec. Doc. 81). HMS opposed the motion on October 25, 2022, and movants replied on November 1, 2022.

## **LEGAL STANDARD**

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as

to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing FED. R. CIV. P. 56); *see Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, a court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.,* 530 F.3d 395, 398 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. *Little*, 37 F.3d at 1075. A court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." *Delta*, 530 F.3d at 399.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.,* 939 F.2d 1257, 1264-65 (5th Cir. 1991). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element

of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings but must identify specific facts that establish a genuine issue for trial. *See id.* at 325; *Little*, 37 F.3d at 1075.

## DISCUSSION

### I.   WHETHER HMS'S EXPRESS INDEMNIFICATION CLAUSES PRECLUDE HMS'S IMPLIED INDEMNITY CLAIM

Franco, FM1, and FM2 argue that HMS's bylaws and articles of incorporation contain express indemnification provisions that preclude any implied indemnification between the parties. (Rec. Doc. 81-1, at 2). Movants' argument is essentially that, because HMS's bylaws and articles contain a clause outlining the procedure for the company to indemnify directors, officers, employees and agents but does not provide for those parties' indemnification of HMS, then the parties clearly intended to deny HMS indemnification rights. *Id.* at 15-18 (citing Rec. Doc. 81-37, at 19).

HMS counters that, as a threshold matter, this Court previously agreed that its claims against Franco are based on his alleged breaches of his fiduciary duties, rather than traditional implied or tort-based indemnification claims. (Rec. Doc. 84, at 20). Additionally, HMS argues that its by-laws were drafted to conform to the Washington Business Corporation Act, which does not place limits on HMS's ability to seek indemnification from directors, like Franco. *Id.* at 25. Moreover, HMS contends that HMS's indemnification claim does not operate within the scope of the

indemnification clause because HMS's by-laws contain important exceptions that apply in this case: that indemnity shall not apply on account of an officer's intentional misconduct and misappropriation of assets. *Id.* at 24-25. Stated simply, HMS contends it can seek indemnification from Franco despite the bylaws' limit on his rights to seek indemnification. *Id.* at 24.

This Court has previously decided that HMS's indemnity claim is governed by Louisiana law, the law that governs Conrad's claims against HMS, because Louisiana law governs the indemnitee's primary liability to the plaintiff. *See* (Rec. Doc. 46, at 8) (citing *Hardy v. Gulf Oil Corp.*, 949 F.2d. 826, 830 n.7 (5th Cir. 1992) (internal citations omitted)). *Nassif v. Sunrise Homes, Inc.*, 739 So. 2d 183, 185 (La. 1999) (internal citations omitted). "It has long been held in Louisiana that a party not actually at fault, whose liability results from the faults of others, may recover by way of indemnity from such others." *Martco Ltd. P'ship v. Bruks Inc.*, 430 F. App'x 332, 335 (5th Cir. 2011) (quoting *Bewley Furniture Co. v. Maryland Cas. Co.*, 285 So.2d 216, 219 (La.1973)). The obligation to indemnify can be contractual or implied, even in the absence of an indemnity agreement. *Nassif v. Sunrise Homes, Inc.*, 739 So.2d 183, 185 (La.1999). Implied indemnity claims are equitable claims that arise only where "the liability of the person seeking indemnification is solely constructive or derivative and only against one who, because of his act, has caused such constructive liability to be imposed." *Martco*, 430 F. App'x at 335; *see also Nassif*, 739 So. 2d at 186 (holding that equitable principle of restitution applies in indemnity action to allow defendant to recover from the party actually at fault, even in absence of contract of

indemnification). Thus, a party who is actually negligent or at fault cannot recover implied indemnity. *Martco*, 430 F. App'x at 335 (citing *Hamway v. Braud*, 838 So.2d 803, 806 (La.App. 1st Cir. 2002)).

Here, parties disagree on whether HMS's third-party claims for indemnification from Franco are barred by the express director and officer indemnification provisions in HMS's bylaws. Notwithstanding the Court's previous finding that HMS's claims against Franco arose because of his breach of fiduciary duty, HMS's claims against Franco are implied indemnification claims not governed by the contractual provisions contained in HMS's bylaws. HMS's bylaws provide for the corporation to indemnify directors, officers, and certain employees and agents except in the case of those parties' intentional misconduct or violation of law. (Rec. Doc. 81-37, at19).

Movants correctly cite to *Evans v. J. Ray McDermott, Inc.*, for the proposition that an implied indemnity claim cannot be maintained when the indemnity obligation between the parties is contained in an express agreement. (Rec. Doc. 81-1, at 16) (citing 342 F. Supp. 1390, 1393 (E.D. La. 1792)). However, to control recovery for an indemnification claim, the express contract provisions must be "general and comprehensive enough to cover indemnity for" the specific claim. *Evans*, 342 F. Supp. at 1393. Worded differently, "if the indemnity provisions of a contract are not sufficiently broad to cover [the claim], the indemnity will be implied." *Id.*[2]

---

[2] Further, the Court is not persuaded by movants' citation to Delaware law in *New Zealand Kiwifruit Marketing Board v. City of Wilmington*, which explains that Delaware courts limit implied indemnification to situations where no express indemnification clause exists. 825 F. Supp. 1180, 1194 (D. Del. 1993). The Court will proceed, applying Louisiana law.

Here, the directors and officers indemnification clause in HMS's bylaws provides that the corporation will indemnify certain parties to the full extent of permitted by the Washington Business Corporation Act. (Rec. Doc. 81-27, at 19). It also notes that the corporation may indemnify employees and agents who are not directors. The indemnification clause is not broad or comprehensive enough to include an indemnity obligation that a director owes to the corporation. Thus, the indemnity provisions do not control, let alone bar, HMS's implied indemnity claim against Franco for his breach of fiduciary duties.

## II.     Whether HMS can establish that it is without fault

Finding that the indemnity claim is not barred by HMS's bylaws provisions, the Court turns to movants' second argument: that HMS cannot defeat summary judgment because it cannot prove it is faultless. In Louisiana, implied or tort indemnity is available to a defendant who is only "technically or constructively liable for a plaintiff's loss," allowing that defendant to shift the entire loss to the one primarily responsible for the act that caused the damage. *Nassif*, 739 So. 2d at 186-187 (citing *Green v. TACA Int'l Airlines*, 304 So. 2d 357, 359 (La.1974)). Thus, implied indemnity is not applicable where both parties are actually in the wrong. *United Gas Corp. v. Guillory*, 206 F.2d 49, 53 (5th Cir. 1953); *Hamway v. Braud*, 838 So. 2d 803, 806 (La. App. 1st Cir. 2002).

HMS's *cross-claim* for indemnification against FM1 and FM2 requests that, "to the extent HMS is found liable. . . due to FM1's and FM2's failure to honor their

8

contracts with Conrad, they should be required to indemnify HMS for any damages."
(Rec. Doc. 9, at 16). HMS's *third-party* claim against Franco requests that, "to the
extent HMS is found liable. . . due to FM1's and FM2's failure to honor their contracts
with Conrad, Mr. Franco should be required to indemnify HMS due to the fact that
he committed HMS to agreements in defiance of the directions from HMS's Board of
Directors." *Id.* at 18.[3]

Movants have the burden to show that there is no genuine issue of material
fact that HMS is liable for the breach of contract Conrad alleges. Movants contend
that, if HMS is found liable to Conrad, HMS's acts and omissions would necessarily
preclude recovery for implied indemnity as a faultless bystander. (Rec. Doc. 81-1, at
21). Movants argue that HMS cannot establish that it bears no liability to Conrad or
that its own liability is purely constructive or derivative of movants' actual, exclusive
fault. (Rec. Doc. 81-1, at 20). Specifically, movants contend that because HMS cannot
prove that movants bear the sole responsibility for each action, and because HMS
bears "one iota of responsibility for any of the acts that exposed it to liability, its
indemnity claims fail." *Id.* at 21.

However, movants misstate the level of fault required for implied indemnity.
Under Louisiana law, if HMS is technically or constructively liable for Conrad's loss,
but another party's acts were the true fault or cause of Conrad's damage, HMS can

---

[3] In its opposition, HMS contends that this Court characterized HMS's claim as a claim for breach of
fiduciary duty rather than a claim for indemnification in its previous Order denying a motion to
dismiss. This is incorrect. Although we recognized the basis for the indemnification claim in Franco's
breach of fiduciary duty, the Court continued to characterize HMS's claims against Franco, FM1,
and FM2 as indemnification claims throughout the previous Order. (Rec. Doc. 46). In fact, HMS's
breach of fiduciary duty lawsuit is ongoing in Washington state court, and HMS did not allege a
claim for breach of fiduciary duty in its third-party claim against Franco. (Rec. Doc. 9).

shift the entire loss to that party primarily responsible for the breach of contract. *See Nassif*, 739 So. 2d at 187 (holding that, because the true fault or cause of breach of contract was the negligent work of subcontractor, implied contract of indemnity required subcontractor to indemnify the contractor for entire loss, including attorney fees). Thus, on summary judgment, Franco, FM1, and FM2 must demonstrate that their evidence is sufficient to show that HMS's fault is greater than merely technical or constructive. This burden requires proving more than an "iota" of HMS's liability.

Movants cite to a Washington state court case, *Jain v. J.P. Morgan Securities, Inc.*, 177 P.3d 117 (Wash. Ct. App. 2008) to demonstrate that HMS's "plethora of acts and omissions. . . over a period of months, if not years" indicates that HMS cannot prove that its liability is merely constructive or derivative. (Rec. Doc. 81-1, at 20). In that case, the plaintiffs, who had previously been found liable for violations of securities laws, sought indemnification from their brokers. *Jain*, 177 P.3d at 119. The Because plaintiffs had signed papers allowing the transfer of funds, caused deposits of stock, and placed shares into trusts, the court found that their own involvement in the transactions at issue precluded indemnification. *Id.* at 124.

However, a third-party defendant moving for summary judgment on an implied indemnity claim must produce evidence that the party claiming indemnification was actually at fault, rather than merely passively at fault. In a FELA lawsuit applying Louisiana's implied indemnity law, *Welch v. Kansas City S. Ry. Co.*, the plaintiff alleged that his employer, the Kansas City Southern Railway Company ("KCSR"), was liable to him for injuries sustained after he was exposed to

toxic chemicals on a defective rail car. 940 F. Supp. 2d 402, 403 (W.D. La. 2013). KCSR filed a third-party demand against UOP, LLC ("UOP"), asserting a claim for implied indemnity, and UOP moved for summary judgment. *Id.* at 405-06. UOP noted a Catch-22 for KCSR: although KCSR denied any fault and placed blame squarely on UOP, in order to seek indemnity, KCSR must show actual liability to recover. *Id.* at 408. KCSR asserted its negligence was merely passive, and that the primary fault arose from UOP. *Id.* at 411. Because UOP produced no summary judgment evidence to contradict this claim, and because KCSR produced evidence that the railcar was delivered to UOP before the plaintiff's injury, the court found that there was "at least *some* chance that the negligent acts of UOP [during the time it possessed the rail car] could have been the sole cause of the gasket leak which injured" the plaintiff. *Id.* at 412. Thus, absent further information indicating whether KCSR had any actual fault, or else was merely passively at fault, summary judgment dismissing its indemnity claims was premature. *Id.*

In this case, instead of showing that HMS was more than constructively or passively liable, movants purport to provide evidence that they do not "bear the sole responsibility for each of the acts or omissions that caused Conrad to sue [HMS]." (Rec. Doc. 81-1, at 21). They argue that there is no question that HMS's liability was not purely constructive or derivative because (1) HMS's former senior vice president testified that he and his team considered earlier vessels built by Franco's other LLCs to be HMS projects and (2) HMS's board initially approved a memo in which HMS committed to buy or lease the vessels at issue, but then ultimately chose not to

purchase the vessels because funds would flow back to Franco, who was "in the face of a forensic report stating he had misappropriated seven figure amounts from the company—which the company has not yet even sought to recover." *Id.* at 22-23; (Rec. Doc. 81-34, at 2). Further, movants point to the historical relationship between HMS and Conrad, where Conrad constructed vessels for HMS pursuant to contracts with entities other than HMS. (Rec. Doc. 81-1, at 23). Finally, movants argue that even if HMS could prove that Franco, FM1, and FM2 bear exclusive responsibility, HMS would at least bear some fault for failing to correct Conrad's misconception regarding which party was responsible for payment for the vessels *Id.*

HMS argues that the record evidence establishes that (1) HMS did not approve the memo or commit to buying or leasing the Vessels, and (2) HMS made clear to Conrad that Franco would be entering the Contracts through separately owned entities because HMS was not responsible for the Contracts. (Rec. Doc. 84, at 20 n. 74). HMS points to testimony from Conrad's CFO that, at the time of the contract signing, he knew that the owner of the vessels would be LLCs that Franco owned and started to get the Contracts off the HMS balance sheet (Rec. Doc. 84-12, at 10-12). Additionally, HMS points to evidence to demonstrate that its board never committed to buying or leasing the vessels from Franco. Specifically, they provide emails documenting board approval for Franco to execute a commitment letter agreeing to general terms under which Franco would build the vessels (but not agreeing to enter the contract themselves) and the Construction Contracts that Conrad entered with the Franco LLCs (and not HMS). (Rec. Docs. 84-8, 84-25). HMS notes that movants

do not provide evidence that the entire board agreed that HMS would commit to buy or lease the Vessels from Franco. (Rec. Doc. 84, at 10).

After reviewing the record, the Court agrees. Construing the evidence in the light most favorable to HMS, there is at least some chance that Franco, FM1, and FM2 could have been the sole cause of the breach of contract with Conrad. Although HMS had previously negotiated similar construction contracts with Conrad where the board unanimously approved the construction or acquisition of the proposed vessel, the record evidence demonstrates that the contract at issue in this case differed from HMS's previous contracts. In this case, HMS's board never unanimously approved the purchase, and HMS was not a party or signatory to the Contracts. Although HMS had researched financing options that eventually fell through, HMS never agreed to pay for them. Thus, making all reasonable assumptions in favor of HMS, the Court finds that movants failed to demonstrate that HMS was more than constructively or passively at fault for the breach of contract between movants and Conrad.  Franco, FM1, and FM2 are not entitled to summary judgment in their favor on HMS's cross-claims and third-party demand.

## **CONCLUSION**

Accordingly,

**IT IS ORDERED** that Third-Party Defendants Harley Franco, Franco Marine I, LLC, and Franco Marine 2, LLC's *Motion for Partial Summary Judgment* **(Rec. Doc. 81)** is hereby **DENIED**.

New Orleans, Louisiana, this 14th day of November, 2022.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE

14